## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EZINWANNE H. HAWKINS**,<br>1728 Irving Street, Northeast<br>Washington, District of Columbia  20018,<br>on behalf of herself and all others similarly<br>situated,<br><br>Plaintiff,<br><br>v.<br><br>**TRANSIT EMPLOYEES FEDERAL<br>CREDIT UNION**,<br>2000 Bladensburg Road, Northeast<br>Washington, District of Columbia  20018,<br><br>and<br><br>**SECURITY RECOVERY, INC.**,<br>1101 Hengemihle Avenue<br>Baltimore, Maryland  21221,<br><br>Defendants. | Civil Action No. _____<br><br><br>JURY TRIAL DEMANDED<br><br><br>**CLASS ACTION COMPLAINT** |

Comes now, Ms. Ezinwanne H. Hawkins, the Plaintiff, by and through her undersigned

counsel, and as her Complaint against Defendants, she alleges as follows:

### INTRODUCTION

1.      On behalf of herself and others similarly situated, Plaintiff brings claims against Defendant

**Transit Employees Federal Credit Union** (hereinafter "**TEFCU**") pursuant to the District

of Columbia Municipal Regulations regarding the sale and repossession of motor vehicles,

the District of Columbia Consumer Protection Procedures Act, and the District of

Columbia's codification of the Uniform Commercial Code, as well as for breach of

contract.  She also brings claims on behalf of herself and others similarly situated against

Defendant **Security Recovery, Inc.** (hereinafter "**SRI**") for violations of the federal Fair

Debt Collection Practices Act.

2.    In connection with consumer auto loans, Defendant TEFCU has billed Plaintiff and other consumers for credit insurance they declined, or did not accept, and charged them delinquency fees pursuant to patently contradictory loan documentation in violation of the D.C. Consumer Protection Procedures Act, codified at Chapter 39 of Title 28 the D.C. Code.

3.    Defendant TEFCU breached its loan agreements with Plaintiff and other consumers by charging delinquency fees at rates in excess of those authorized by said loan agreements.

4.    Defendant TEFCU violated D.C.M.R. § 16-341.5, "Holder's Duties on Repossession," by storing repossessed vehicles outside of the District of Columbia during all or part of the fifteen (15) day periods following repossession.

5.    Defendant TEFCU violated D.C.M.R. § 16-342.2, "Buyer's Right to Redeem the Vehicle," by charging Plaintiff and other consumers with "expenses of retaking" (*i.e.*, repossession fees) in excess of the maximum permitted.

6.    Per D.C.M.R. §§ 16-340.6, "Repossession," and 16-346.2, "Consumer Remedies," Defendant TEFCU's aforesaid violations of D.C.M.R. § 16-341.5 and D.C.M.R. § 16-342.2 constitute unfair trade practices prohibited by the D.C. Consumer Protection Procedures Act.

7.    Furthermore, Defendant TEFCU has violated the Uniform Commercial Code, Subtitle I of Title 28 of the D.C. Code and, specifically, D.C. Code § 28:9-614(1), "Contents and Form of Notification Before Disposition of Collateral:  Consumer-Goods Transaction," (which incorporates and supplements the requirements of § 28:9-613(1)(E), "Contents and Form of Notification Before Disposition of Collateral:  General"), by failing to provide Plaintiff and other consumers with notices mandated by law.

8.  Defendant SRI, which repossessed and stored the vehicles of Plaintiff and other consumers on behalf of Defendant TEFCU, collected excessive repossessions fees demanded by TEFCU without identifying itself as a debt collector or providing consumers with federally mandated notices in violation of the Fair Debt Collection Practices Act, codified at 28 U.S.C. Chapter 41, Subchapter V.

## PARTIES

9.  Plaintiff **Ezinwanne H. Hawkins** is, and was at all times relevant to this action, a citizen and resident of the District of Columbia, residing at 1728 Irving Street, Northeast, Washington, District of Columbia 20018.

10. Defendant **Transit Employees Federal Credit Union** (hereinafter "**TEFCU**") is, and was at all times relevant to this action, a federal credit union, with its principal place of business at 2000 Bladensburg Road, Northeast, Washington, District of Columbia 20018.

11. Defendant TEFCU is, and was at all times relevant to this action, in the business of selling consumer goods or services or supplying a service that would be the subject matter of a trade practice.

12. Defendant **Security Recovery, Inc.** (hereinafter "**SRI**") is, and was at all times relevant to this action, a Maryland corporation, with its principal place of business at 1101 Hengemihle Avenue, Baltimore, Maryland 21221.

13. Defendant SRI is in the business of repossessing vehicles, including vehicles located in the District of Columbia, and, as part of its business, routinely traverses interstate roadways and crosses state boundaries.

14.   As part of its business, Defendant SRI regularly collects, or attempts to collect, consumer debts owed or due, or asserted to be owed or due, to another, including fees related to the repossession of vehicles pursuant to secured loan agreements to which SRI is not a party.

15.   Defendant SRI regularly collects or attempts to collect consumer debts owed or due or asserted to be owed or due another.

16.   Defendant SRI regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, which debts were primarily for personal, family or household purposes.

17.   A principal business engaged in by Defendant SRI is the collection of consumer debts.

## JURISDICTION

18.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) since Plaintiff pleads a claim arising under the laws of the United States, specifically the federal Fair Debt Collection Practices Act.

19.   Furthermore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) since Plaintiff's claims arising under District of Columbia law are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

20.   Venue in this District is proper per 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, including the drafting and execution of the subject loan agreement, the repossession of Plaintiff's motor vehicle, and the drafting and service of inadequate notice.

21. As part of its repossession business, Defendant SRI regularly enters into and operates within the District of Columbia and thus has sufficient minimum contacts to justify this Court's exercise of personal jurisdiction.

## SUBSTANTIVE ALLEGATIONS

### Plaintiff's Loan Agreement

22. On or about June 14, 2007, Plaintiff travelled to the offices of Defendant TEFCU, located in Washington, D.C., to obtain credit for the purchase of an automobile.

23. There, an employee or agent of TEFCU presented Plaintiff with documents memorializing a five-year secured loan agreement by which Defendant TEFCU provided Plaintiff with $29,683 to finance her  purchase of a used 2005 Lexus RX 330 automobile, V.I.N. 2T2HA31U65C043642, (hereinafter "Vehicle") for personal use from a dealership.

24. Plaintiff executed said documents.

25. The loan documentation consisted of a one-page "Open-End Voucher and Security Agreement," ("Open-End Agreement") a one-page "Credit Insurance Application & Schedule," a one-page "Security Agreement (Financing Statement)," and another, single page entitled "Additional Provisions."

26. The Open-End Agreement obligated Plaintiff to pay Defendant TEFCU the unpaid balance of the total amount to be paid for the purchase of the Vehicle and granted Defendant TEFCU a security interest in Plaintiff's Vehicle, providing Defendant TEFCU with the right to repossess the Vehicle in the event of default by Plaintiff and legally or beneficially entitling Defendant TEFCU to the proceeds of the instrument of security that secures the loan agreement.

27.   The Open-End Agreement provided for financing fees equal to an annual interest rate of eight and one-half percent (8.5%), compounding daily.

28.   The Open-End Agreement indicates that Defendant TEFCU advanced to Plaintiff the amount of $29,683 (twenty-nine thousand, six hundred, eighty-three dollars).

29.   The Open-End Agreement indicates that the initial payment due was $609.16 (six hundred, nine and 16/100 dollars) and that the term of the loan was sixty (60) months.

30.   The loan that Defendant TEFCU provided to Plaintiff was intended to finance her purchase of an automobile for personal use.

31.   Plaintiff purchased the Vehicle securing the loan, for personal use from a dealership.

32.   The dealership from which Plaintiff purchased her Vehicle buys, sells, exchanges, or offers or attempts to buy, sell, or exchange, interests in motor vehicles; negotiates or attempts to negotiate purchases, sales, or exchanges of interests in motor vehicles; and is engaged in the business of selling motor vehicles.  The dealership is, and was, neither a public officer (or a public officers' agent); a person disposing of motor vehicles acquired for its own use; a person dealing solely in the sale or distribution of fire-fighting equipment, construction equipment, ambulances, or funeral vehicles; a manufacturer of motor vehicles or representative of a manufacturer of motor vehicles; nor a person engaged in the business of buying motor vehicles from dealers licensed in the District of Columbia for sale or distribution outside of the District of Columbia.

**Credit Insurance**

33. During the process of reviewing the loan documentation and executing the loan agreement, Defendant TEFCU's representative presented Plaintiff with the Open-End Voucher, which was drafted, selected, prepared, and/or controlled by Defendant TEFCU or its agents, and which, among other things, stated that Plaintiff had the option to "voluntarily elect to become insured" with credit insurance and which, upon execution, would indicate that Plaintiff had elected "Single Credit Disability" insurance at a monthly cost of $0.359 "per $100 of [the] monthly loan balance."

34. The Open-End Voucher expressly refers to and conditions eligibility for coverage on "eligibility requirements stated in the Credit Insurance Application/Schedule."

35. During the process of reviewing the loan documentation and executing the loan agreement, Plaintiff indicated to Defendant TEFCU's representative that she did not desire to purchase the optional credit insurance.

36. Defendant TEFCU's representative represented to Plaintiff that the Open-End Voucher's indication that Plaintiff had elected credit insurance was part of the pre-printed contract and represented to Plaintiff that she had to sign the Open-End Voucher to obtain credit but would be able to decline the credit insurance by executing another document.

37. Defendant TEFCU's representative thereafter presented Plaintiff with the Credit Insurance Application & Schedule, which Plaintiff executed, indicating her denial of any and all credit insurance.

38.  Notwithstanding Defendant TEFCU's representative's representations and Plaintiff's statement concerning her desire *not* to purchase credit insurance, and in direct contradiction of Plaintiff's express denial of credit insurance, as memorialized by the Credit Insurance Application & Schedule, upon execution of the loan agreement and through the present, Defendant TEFCU charged, and continues to charge, Plaintiff for premiums associated with credit insurance.

39.  TEFCU charged Plaintiff interest on the credit insurance premiums.

### Delinquency Fees

40.  During the process of reviewing the loan documentation and executing the loan agreement, Defendant TEFCU's representative presented Plaintiff with an "Additional Provisions" document that was drafted, selected, prepared, and/or controlled by Defendant TEFCU or its agents.

41.  The Additional Provisions document included the following provision:  "[Plaintiff] agrees to pay in addition to all other charges and payments herein provided for[,] a delinquency charge not in excess of **one percent (5%)** [*sic*] per month of amounts in default." (Emphasis added.)

42.  Defendant TEFCU subsequently charged Plaintiff delinquency fees in excess of one percent (1%) per month of all amounts in default, in violation of the terms of the loan agreement which capped such fees at "one percent."

**November 2009 Repossession & Redemption of Plaintiff's Vehicle**

43. On or about October 15 2009, Defendant TEFCU mailed Plaintiff a "Repossession Letter," indicating that Plaintiff was in default and notifying her that Defendant TEFCU would exercise its right to repossess the Vehicle if Plaintiff did not bring the loan current by October 26, 2009.

44. In or about November 2009, Defendant TEFCU or its agent repossessed the Vehicle from where Plaintiff had last parked it, on a public street, in front of Plaintiff's home, within the District of Columbia.

45. Shortly thereafter, Defendant TEFCU mailed Plaintiff a "Redemption Letter" (hereinafter "2009 Redemption Letter"), informing Plaintiff that Defendant TEFCU had repossessed her Vehicle.

46. The 2009 Redemption Letter did not contain a clear description of any liability for a deficiency.

47. The 2009 Redemption Letter did not state the location of the public auction at which Defendant TEFCU intended to dispose of the Vehicle.

48. The 2009 Redemption Letter did not state that Plaintiff had a right to redeem the Vehicle at any time before the Vehicle was sold.

49. The 2009 Redemption Letter did not describe the collateral, *i.e.*, Plaintiff's Vehicle.

50. The 2009 Redemption Letter did not state that Plaintiff was entitled to an accounting of the unpaid indebtedness and state the charge, if any, for an accounting.

51. The 2009 Redemption Letter contained information that was substantially misleading.

52. Within the fifteen (15) day period following Defendant TEFCU's repossession of the Vehicle in 2009, Defendant TEFCU or its agent transported the Vehicle from and stored the Vehicle outside the District of Columbia, at Defendant SRI's facility in Baltimore, Maryland.

53. In or about November 2009, Plaintiff paid to Defendant TEFCU the amount it had identified as "Past Due" on her loan.

54. In or about November 2009, an agent or employee of Defendant TEFCU instructed Plaintiff that she would then need to reclaim her Vehicle from Defendant SRI's facility in Baltimore, Maryland.

55. In or about November 2009, Plaintiff travelled to Defendant SRI's Baltimore facility to redeem her Vehicle.

56. In or about November 2009, a representative of Defendant SRI informed Plaintiff that she would need to pay a "Repossession Fee" in excess of $100, in cash, before it would release her Vehicle to her.

57. In or about November 2009, Plaintiff spoke with one or more representatives of Defendant SRI.

58. Defendant SRI's initial communication with Plaintiff and was oral.

59. In Defendant SRI's initial communication with Plaintiff, Defendant SRI failed to state that it was a debt collector.

60. In Defendant SRI's initial communication with Plaintiff, Defendant SRI failed to state that it was attempting to collect a debt and that any information it obtained would be used for that purpose.

61. The $425 "Repossession Fee" was owed to Defendant TEFCU.

62. In or about November 2009, Plaintiff paid to Defendant SRI a "Repossession Fee" in excess of $100, in cash, after which Defendant SRI released her Vehicle to her.

### June 2011 Repossession & Redemption of Plaintiff's Vehicle

63. On or about June 2, 2011, Defendant TEFCU mailed Plaintiff a "Repossession Letter," indicating that Plaintiff was in default and notifying her that Defendant TEFCU would exercise its right to repossess the Vehicle if Plaintiff did not bring the loan current by June 13, 2011.

64. On or about June 20, 2011, Defendant TEFCU or its agent repossessed the Vehicle from where Plaintiff had last parked it, on a public street, in front of Plaintiff's home, within the District of Columbia.

65. On or about June 20, 2011, Defendant TEFCU mailed Plaintiff a "Redemption Letter" (hereinafter "2011 Redemption Letter"), informing Plaintiff that Defendant TEFCU had repossessed her Vehicle.

66. The 2011 Redemption Letter stated that:

> In accordance with the local law, you have (15) days from the date of this letter to pay the vehicle balance in full and any other outstanding balances, plus the repossession and storage expenses. In order to avoid the sale of this vehicle at a public auction, the following must be in our office by the close of business (3:00 pm) on **07/01/11** [*blank space in original*]. The vehicle is currently stored at:
>
> **SRI 1101 HENGEMIHLE AVE. BALTIMORE MD 21221**
>
> If the above amounts are not paid, the collateral will be placed in a public auction on **07/07/11** at 9:30am to the highest bidder or any Tuesday thereafter until sold at:
>
> [*blank space in original*]

67. The 2011 Redemption Letter did not contain a clear description of any liability for a deficiency.

68. The 2011 Redemption Letter identified a "Past Due" amount of $1,214.57 "as of 06/20/11," a "Payoff Balance" of $19,414.16 "good through 07/01/11," a "Storage fee" of $0.00 per day, and a "Repossession Fee" of $425.00.

69. The 2011 Redemption Letter did not indicate whether the $19,414.16 "Payoff Balance" included the $425 "Repossession Fee."

70. The 2011 Redemption Letter did not indicate whether the "Past Due" amount of $1,214.57 included the $425 "Repossession Fee."

71. The 2011 Redemption Letter did not state the location of the public auction at which Defendant TEFCU intended to dispose of the Vehicle.

72. The 2011 Redemption Letter did not state that Plaintiff had a right to redeem the Vehicle at any time before the Vehicle was sold.

73. The 2011 Redemption Letter did not describe the collateral, *i.e.*, Plaintiff's Vehicle.

74. The 2011 Redemption Letter did not state that Plaintiff was entitled to an accounting of the unpaid indebtedness and state the charge, if any, for an accounting.

75. The 2011 Redemption Letter did not state the time and place of a public disposition; rather, the 2011 Redemption Letter identified one possible time of a public sale.

76. The 2011 Redemption Letter contained information that was substantially misleading.

77. Within the fifteen (15) day period following Defendant TEFCU's repossession of the Vehicle in 2011, Defendant TEFCU or its agent transported the Vehicle from and stored the Vehicle outside the District of Columbia, at Defendant SRI's facility in Baltimore, Maryland.

78. On or about June 21, 2011, Plaintiff paid to Defendant TEFCU the amount of $1,214.57, which it had identified as the amount "Past Due" on her loan.

79. On or about June 21, 2011, an agent or employee of Defendant TEFCU instructed Plaintiff that she would then need to reclaim her Vehicle from Defendant SRI's facility in Baltimore, Maryland.

80. On or about June 21, 2011, Plaintiff travelled to Defendant SRI's Baltimore facility to redeem her Vehicle.

81. On or about June 21, 2011, a representative of Defendant SRI informed Plaintiff that she would need to pay the $425 "Repossession Fee" in cash before it would release her Vehicle to her.

82. On or about June 21, 2011, Plaintiff spoke with one or more representatives of Defendant SRI.

83. Defendant SRI's initial communication with Plaintiff and was oral.

84. In Defendant SRI's initial communication with Plaintiff, Defendant SRI failed to state that it was a debt collector.

85. In Defendant SRI's initial communication with Plaintiff, Defendant SRI failed to state that it was attempting to collect a debt and that any information it obtained would be used for that purpose.

86. The $425 "Repossession Fee" was owed to Defendant TEFCU.

87. On or about June 21, 2011, Plaintiff paid Defendant SRI $425 in cash, after which Defendant SRI released her Vehicle to her.

## CLASS ACTION ALLEGATIONS

88. During the relevant period, Defendant TEFCU has routinely entered into secured loan agreements with consumers for their purchases of automobiles for personal use using form documents the same as or similar to those used in its transaction with Plaintiff and providing Defendant TEFCU with the right to repossess the said vehicles in the event of default by said consumers and legally or beneficially entitling Defendant TEFCU to the proceeds of the instruments of security that secured said loan agreements.

89. In direct contradiction of said consumers' denials of (or failure to accept) offers of credit insurance, as memorialized by loan documentation that was the same or substantially similar to the Credit Insurance Application & Schedule executed by Plaintiff, upon execution of loan agreements, Defendant TEFCU has routinely charged said consumers premiums for credit insurance.

90. During the relevant period, Defendant TEFCU routinely utilized form documents the same as or similar to those used in its dealings with Plaintiff in its transactions with other consumers, including but not limited to loan documents, notices of repossession, and notices of intent to dispose of collateral.

91. During the relevant period, Defendant TEFCU routinely charged consumers similarly situated to Plaintiff "Repossession Fees" in excess of $100.

92. During the relevant period, Defendant TEFCU has routinely charged consumers similarly situated to Plaintiff with delinquency fees at rates in excess of the rate(s) authorized by loan agreements memorialized by loan documentation the same as or similar to those memorializing Plaintiff's loan agreement.

14

93.   During the relevant period, Defendant TEFCU has repossessed the vehicles of consumers similarly situated to Plaintiff and has routinely failed to provide said consumers with notice of the places of the public auctions at which Defendant TEFCU intended to dispose of said vehicles.

94.   During the relevant period, Defendant TEFCU or its agents have routinely, within the fifteen (15) day periods following repossession of said vehicles, removed said vehicles from and stored said vehicles outside of the District of Columbia, including, in many instances, at Defendant SRI's facility in Baltimore, Maryland.

95.   During the relevant period, Defendant TEFCU routinely conditioned redemption, reinstatement, or release of said vehicles upon the payment of, among other things, "Repossession Fees," or other similarly designated fees related to the repossession of said vehicles, in excess of the maximum permitted by law.

96.   During the relevant period, Defendant SRI has routinely collected from said consumers debts owed or due, or asserted to be owed or due, to Defendant TEFCU, including "Repossession Fees," or similarly designated fees related to the repossession of said vehicles, pursuant to said secured loan agreements, to which Defendant SRI is not a party, and in excess of the maximum permitted by law.

**Proposed Classes**

97. Plaintiff brings this Complaint on behalf of herself and the following classes initially defined as follows:

**TEFCU Class**:

All natural persons who are or were a party to a secured loan agreement with Defendant TEFCU by which Defendant TEFCU provided financing for the purchase of a motor vehicle, from a dealer, for personal use, and (a) whom Defendant TEFCU charged with premiums for credit insurance that they did not affirmatively accept or that they declined, (b) whom Defendant TEFCU charged with delinquency fees in excess of the rate permitted by said secured loan agreement, (c) whose vehicle Defendant TEFCU, or its employee or agent, repossessed from within the District of Columbia and stored outside the District of Columbia within the 15-day period following said repossession, (d) to whom Defendant TEFCU provided inadequate or misleading post-repossession notice of intent to dispose of collateral, or (e) who subsequently reinstated, redeemed, or recovered said vehicle paying a fee related to repossession of said vehicle in excess of $100 (one hundred dollars), on or since the day three years prior to the filing of the Complaint.

**SRI Class**:

All natural persons who paid to Defendant SRI a fee demanded in excess of $100 (one hundred dollars) related to the repossession or storage of a vehicle repossessed from within the District of Columbia and owed to other than Defendant SRI, on or since the day one year prior to the filing of the Complaint.

98.   Excluded from each proposed Class are any officer, director, or employee of Defendant TEFCU or Defendant SRI and anyone employed by counsel for Plaintiff in this action.

99.   This action has been brought pursuant to and may properly be maintained on behalf of the proposed Classes pursuant to the criteria of Federal Rule of Civil Procedure 23.

### Numerosity

100.   Upon information and belief, members of the Classes are so numerous that their individual joinder herein is impracticable.  Upon discovery of their identities, Plaintiff can notify the members of the Classes about the pendency of this action by mail, supplemented, if deemed necessary or appropriate by the Court, by published notice.

### Commonality & Predominance

101.   Common questions of law and fact exist as to all members of each proposed Class and predominate over questions affecting only individual class members.  These common questions include the following:

- Whether Defendant TEFCU's common forms pertaining to secured loan agreements for the purchase of automobiles, are patently ambiguous and should be construed against TEFCU;

- Whether Defendant TEFCU charged class members delinquency fees in excess of the rates authorized by their secured loan agreements for the purchase of automobiles;

- Whether Defendant TEFCU's notices of intent to dispose of repossessed vehicles comply with the D.C. Municipal Regulations and the District of Columbia's Codification of the Uniform Commercial Code;

- Whether the "Repossession Fees" assessed by Defendant TEFCU against class members in connection with redemption, reinstatement, or recovery of their repossessed vehicles are in excess of that permitted by the D.C. Municipal Regulations;

- Whether Defendant SRI is a "debt collector" within the meaning of the federal Fair Debt Collection Practices Act; and

- Whether the "Repossession Fees," or similarly designated fees, collected from class members by Defendant SRI are debts owed to entities other than SRI.

**Typicality**

102.  Plaintiff's claims are typical of the claims of each Class because the claims involve the use of standardized form documents, standard procedures that are misleading, and standard practices regarding the making of loans, the repossession of vehicles, and the reinstatement, redemption, or release of said vehicles.  Specifically:

- Using Defendant TEFCU's standardized form documents, Plaintiff entered into a secured loan agreement with Defendant TEFCU by which Defendant TEFCU provided her with financing for the purchase of a motor vehicle, from a dealer, for personal use;

- Pursuant to its standardized form documents and standard procedures, Defendant TEFCU charged Plaintiff premiums for credit insurance, despite Plaintiff having declined such coverage;

- Defendant TEFCU charged Plaintiff delinquency fees at rates in excess of those authorized by said loan agreement and Defendant TEFCU's standardized form documents;

- Defendant TEFCU repossessed Plaintiff's Vehicle and thereafter failed to provide her with adequate post-repossession notice, using a form notice letter;

- Defendant TEFCU repossessed Plaintiff's Vehicle from within the District of Columbia and, within the fifteen (15) day periods following said repossession, Defendant TEFCU, or its employee or agent, stored Plaintiff's Vehicle outside of the District of Columbia; and

- Defendant TEFCU and Defendant SRI required Plaintiff to pay to Defendant SRI, and Plaintiff did pay to Defendant SRI, a "Repossession Fee," or similarly designated fee related to the repossession of her vehicle, in excess of $100 (one hundred dollars).

**Adequacy**

103. Plaintiff is an adequate representative of the proposed Classes she seeks to represent because her interests do not conflict with the interests of the members of the Classes. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute the action vigorously.  As such, the interests of class members will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority**

104. A class action is superior to other available means for the fair and efficient adjudication of these claims.  The injuries suffered by each class member, while meaningful on an individual basis, are not of such magnitude as to make the prosecution of individual actions against Defendants TEFCU and SRI economically feasible.  Even if individual class members could afford individualized litigation, the court system might not.  In addition, individualized litigation presents the potential for inconsistent or contradictory judgments.  Individualized litigation would increase the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

105. In the alternative, the Classes may be certified because:

   a. the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants TEFCU and SRI;

   b. the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c. Defendants TEFCU and SRI have acted, or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

<u>COUNT I</u>
**Violations of the Uniform Commercial Code**
**28 D.C. Code Subtitle I**
**(TEFCU Class)**

106.   Plaintiff, on behalf of herself and all others similarly situated, re-alleges, as if fully set forth

herein, each and every allegation set forth above.

107.   The motor vehicles that Plaintiff and members of the TEFCU Class purchased with

financing provided by Defendant TEFCU, pursuant to their loan agreements with

Defendant TEFCU, are, or were at all times relevant to this matter, "collateral" and

"consumer goods" within the meanings of the Uniform Commercial Code, per 28 D.C.

Code § 9-102(12) and (23), respectively.

108.   The loan agreements pursuant to which Defendant TEFCU financed Plaintiff's and the

TEFCU Class members' purchases of motor vehicles, from dealers, for personal use, are,

or were at all times relevant to this matter, "consumer-goods transaction(s)" and "consumer

transaction(s)" within the meanings of the Uniform Commercial Code, per 28 D.C. Code §

9-102(24) and (26), respectively.

109.   Plaintiff and the members of the TEFCU Class are, or were at all times relevant to this

matter, "consumer debtor(s)" and "debtor(s)" within the meanings of the Uniform

Commercial Code, per 28 D.C. Code § 9-102(22) and (28), respectively.

110.   With respect to the loan agreements pursuant to which Defendant TEFCU repossessed the

vehicles of Plaintiff and the members of the TEFCU Class, Defendant TEFCU is, or was at

all times relevant to this matter, a "secured party" within the meaning of the Uniform

Commercial Code, per 28 D.C. Code § 9-102(72).

111. All or parts of the loan documentation executed by Plaintiff and members of the TEFCU Class and pursuant to which Defendant TEFCU financed their purchases of motor vehicles, are, or were at all times relevant to this matter, or memorialized, "security agreement(s)" within the meaning of the Uniform Commercial Code, per 28 D.C. Code § 9-102(73).

112. Defendant TEFCU's interests in, or rights to repossess and dispose of, the vehicles owned by Plaintiff and members of the TEFCU Class are, or were at all times relevant to this matter, "security interest(s)" within the meaning of the Uniform Commercial Code, per 28 D.C. Code § 1-201(37).

113. Defendant TEFCU violated 28 D.C. Code § 9-614(1)(A) (which incorporates the requirements of 28 D.C. Code § 9-613(1)(B)) by failing to provide Plaintiff and the members of the TEFCU Class with post-repossession notice describing the collateral, *i.e.*, Plaintiff's and the TEFCU Class members' vehicles, that were the subjects of the intended dispositions.

114. Defendant TEFCU violated 28 D.C. Code § 9-614(1)(A) (which incorporates the requirements of 28 D.C. Code § 9-613(1)(D)) by failing to provide Plaintiff and the members of the TEFCU Class with post-repossession notice stating that the Plaintiff and the members of the TEFCU Class were entitled to accountings of the unpaid indebtedness and the charge, if any, for such accountings.

115. Defendant TEFCU violated 28 D.C. Code § 9-614(1)(A) (which incorporates the requirements of 28 D.C. Code § 9-613(1)(E)) by failing to provide Plaintiff and the members of the TEFCU Class with post-repossession notice disclosing the location(s) of the public auctions at which Defendant TEFCU intended to dispose of Plaintiff's and the TEFCU Class members' vehicles.

116. Defendant TEFCU violated 28 D.C. Code § 9-614(1)(B) in its transactions with Plaintiff and the members of the TEFCU Class by failing to provide with post-repossession notice describing all liabilities for any deficiencies that were due to Defendant TEFCU in order to redeem the collateral.

117. As such, Plaintiff and the members of the TEFCU Class are entitled to recover statutory damages pursuant to 28 D.C. Code § 9-625(c).

**COUNT II**
**Violations of the D.C. Consumer Protections Procedure Act**
**28 D.C. Code Ch. 39**
**(TEFCU Class)**

118. Plaintiff, on behalf of herself and all others similarly situated, re-alleges, as if fully set forth herein, each and every allegation set forth above.

119. Plaintiff and members of the TEFCU Class are, or were at all times relevant to this matter, "consumers" within of the meaning of the D.C. Consumer Protection Procedures Act, per 28 D.C. Code § 3901(a)(2).

120. Plaintiff and the members of the TEFCU Class are, or were at all times relevant to this matter, "retail buyer(s)" and "buyer(s)" within the meanings of D.C.M.R. §§ 16-340, 16-341, and 16-342, per D.C.M.R. § 16-399.

121. The dealers from whom Plaintiff and the members of the TEFCU Class purchased the vehicles financed by Defendant TEFCU pursuant to their respective loan agreements are, or were at all times relevant to this matter, "dealer(s)" within the meaning of D.C.M.R. §§ 16-300.

122. Defendant TEFCU is, or was at all times relevant to this matter, a "merchant" within the meaning of the D.C. Consumer Protection Procedures Act, per 28 D.C. Code § 3901(a)(3).

123. The loan agreements to which Plaintiff and the members of the TEFCU Class are or were parties, or some part of said loan agreements, are, or were at all times relevant to this matter, "instruments of security" within the meaning of 50 D.C. Code § 601.

124. Defendant TEFCU is, or was at all times relevant to this matter, a "holder" within the meaning of D.C.M.R. §§ 16-340, 16-341, and 16-399.

### Violations Concerning Credit Insurance

125. Defendant TEFCU's providing loans for Plaintiff's and the TEFCU Class members' purchases of motor vehicles and charging the same premiums or fees for credit insurance, repossession of vehicles, or late payments pursuant to or in conjunction with said loans are, or were at all times relevant to this matter, "trade practices" within the meaning of the D.C. Consumer Protection Procedures Act, per 28 D.C. Code § 3901(a)(6).

126. The financing services that Defendant TEFCU provides or provided to Plaintiff and the members of the TEFCU Class, per the loan agreements to which they are or were parties, are, or were at all times relevant to this matter, "goods and services" within the meaning of the D.C. Consumer Protection Procedures Act, per 28 D.C. Code § 3901(a)(7).

127. Defendant TEFCU's (1) drafting, selection, preparation, or control of the loan documentation that Plaintiff and members of the TEFCU Class executed as part of their respective loan agreements and (2) charging Plaintiff and the members of the TEFCU Class with credit insurance premiums, in combination with (3) any misrepresentations by Defendant TEFCU's representative(s) regarding (a) the *pro forma* nature of the loan documentation indicating that the Plaintiff and the members of the TEFCU Class had elected credit insurance or (b) how Plaintiff and the TEFCU Class could have declined credit insurance during the execution of their respective loan agreements, constitute unlawful trade practices prohibited by 28 D.C. Code § 3904(e), (f) or (r), regardless of whether Plaintiff or members of the TEFCU Class were, in fact, misled, deceived, or damaged thereby.

128. Defendant TEFCU's charging Plaintiff and the members of the TEFCU Class with premiums for credit insurance, despite their having declined or never having opted for coverage constitutes, or constituted, an unlawful trade practice prohibited by 28 D.C. Code § 3904(e), (f) and (r), regardless of whether Plaintiff or the members of the TEFCU Class were, in fact, misled, deceived, or damaged thereby.

129. As a direct and proximate cause of Defendant TEFCU's misrepresentations or omissions, Plaintiff and the members of the TEFCU Class have sustained damages in an amount to be determined at trial.

130. As such, per 28 D.C. Code § 3905(k)(1), Defendant TEFCU is liable to Plaintiff and the members of the TEFCU Class for treble damages or $1,500 *per violation* of the D.C. Consumer Protection Procedures Act, whichever is greater; reasonable attorneys' fees and expenses; an injunction prohibiting (1) Defendant TEFCU's misrepresentations or omissions regarding how consumers can decline optional credit insurance in connection with consumer auto loans and (2) Defendant TEFCU's charging consumers with premiums for credit insurance they have declined or for which they never opted; additional relief as may be necessary to restore the members of the TEFCU Class money or property that might have been acquired by  Defendant TEFCU or its agents by means of Defendant TEFCU's misrepresentations or omissions regarding how consumers can decline optional credit insurance in connection with consumer auto loans or Defendant TEFCU's charging consumers with premiums for credit insurance they have declined or for which they never opted; and any other relief that the Court deems proper.

### Violations Concerning Interstate Storage

131. Defendant TEFCU's or its agents' storage of Plaintiff's and the TEFCU Class members' repossessed vehicles outside the District of Columbia within the fifteen (15) day periods following Defendant TEFCU's or its agent's repossessions of said vehicles violates the express requirements of D.C.M.R. § 16-341.5 and, per D.C.M.R. § 16-346.2, as interpreted by the courts of the District of Columbia, *see Chamberlain v. American Honda Finance Corp.*, 931 A.2d 1018, 1022 (D.C. 2007), constitutes an unlawful trade practice under Chapter 39 of Title 28 of the D.C. Code.

132.   As a direct and proximate cause of Defendant TEFCU's or its agents' storage of Plaintiffs' and the TEFCU Class members' vehicles outside the District of Columbia within the fifteen (15) day periods following Defendant TEFCU's or its agent's repossession of said vehicles, Plaintiff and the members of the TEFCU Class have sustained damages in an amount to be determined at trial.

133.   As such, per 28 D.C. Code § 3905(k)(1), Defendant TEFCU is liable to Plaintiff and the members of the TEFCU Class for treble damages or $1,500 *per violation* of the D.C. Consumer Protection Procedures Act, whichever is greater; reasonable attorneys' fees and expenses; an injunction prohibiting Defendant TEFCU's and its agents' storage of vehicles repossessed within the District of Columbia, pursuant to a consumer auto loan, outside of the District of Columbia within fifteen (15) days of said repossession; additional relief as may be necessary to restore to Plaintiffs and the members of the TEFCU Class money or property that might have been acquired by Defendant TEFCU or its agents by means of Defendant TEFCU's or its agents' storage of vehicles repossessed within the District of Columbia, pursuant to a consumer auto loan, outside of the District of Columbia within fifteen (15) days of said repossession; and any other relief that the Court deems proper.

**Violations Concerning Repossession Fees**

134. Defendant TEFCU's or its agents' conditioning redemption, reinstatement, or release of Plaintiff's and the TEFCU Class members' repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of said vehicles) in excess of $100 (one hundred dollars) violates the express requirements of D.C.M.R. § 16-342.2 and, per D.C.M.R. § 16-346.2, as interpreted by the courts of the District of Columbia, *see Chamberlain v. American Honda Finance Corp.*, 931 A.2d 1018, 1022 (D.C. 2007), constitutes an unlawful trade practice under Chapter 39 of Title 28 of the D.C. Code.

135. As a direct and proximate cause of Defendant TEFCU's or its agents' conditioning redemption, reinstatement, or release of Plaintiff's and the TEFCU Class members' repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of said vehicles) in excess of $100 (one hundred dollars), Plaintiff and the members of the TEFCU Class have sustained damages in an amount to be determined at trial.

136. As such, per 28 D.C. Code § 3905(k)(1), Defendant TEFCU is liable to Plaintiff and the members of the TEFCU Class for treble damages or $1,500 *per violation* of the D.C. Consumer Protection Procedures Act, whichever is greater; reasonable attorneys' fees and expenses; an injunction prohibiting Defendant TEFCU's and its agents' conditioning redemption, reinstatement, or release of repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of a vehicle) in excess of $100 (one hundred dollars); additional relief as may be necessary to restore to Plaintiff or the members of the TEFCU Class money or property that might have been acquired by Defendant TEFCU or its agents by means of Defendant TEFCU's or its agents' conditioning redemption, reinstatement, or release of Plaintiff's or the TEFCU Class members' repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of said vehicles) in excess of $100 (one hundred dollars); and any other relief that the Court deems proper.

## COUNT III
## Breach of Contract
### (TEFCU Class)

137. Plaintiff, on behalf of herself and all others similarly situated, re-alleges, as if fully set forth herein, each and every allegation set forth above.

138. The secured loan agreement documentation that Plaintiff and the members of the TEFCU Class entered into with Defendant TEFCU and pursuant to which Defendant TEFCU provided Plaintiff and the members of the TEFCU Class with financing for their purchases of motor vehicles were drafted, selected, prepared, or controlled by Defendant TEFCU or its agents.

139. The Delinquency Charges terms (or similarly titled provisions) of said loan agreements, which specify or specified the rate(s) of the delinquency fees that Defendant TEFCU is or was authorized to charge Plaintiff and the members of the TEFCU Class during any periods during which they are or were in default are patently ambiguous.

140. Despite having drafted, selected, prepared, or controlled the terms of the loan agreements, including said patently ambiguous Delinquency Charges term (or said similarly titled provisions), Defendant TEFCU improperly construed said ambiguities against Plaintiff and the members of the TEFCU Class by charging them delinquency fees at rates in excess of that which the loan agreements authorize or authorized had Defendant TEFCU construed the patently ambiguous terms in favor of Plaintiff and the members of the TEFCU Class.

141. Defendant's charging Plaintiff and the members of the TEFCU Class delinquency fees at rates in excess of that which the loan agreements authorize or authorized, had Defendant TEFCU construed the patently ambiguous terms in favor of Plaintiff and the members of the TEFCU Class, constitutes material breaches of said loan agreements.

142. As such, Plaintiff and the members of the TEFCU Class are entitled to recover compensatory damages in an amount not less than the difference between the total delinquency fees that Defendant charged Plaintiff and the members of the TEFCU Class at rate(s) higher than authorized by the patently ambiguous Delinquency Charges term (or similarly titled provisions) and the total delinquency fees that Defendant TEFCU is or would have been authorized to charge Plaintiff and the members of the TEFCU Class had Defendant TEFCU construed said term (or similarly titled provisions) in favor of Plaintiff and the members of the TEFCU Class.

## COUNT IV
### Violation of the Federal Fair Debt Collection Practices Act
### 28 U.S.C. Ch. 41, Subch. V
### (SRI Class)

143. Plaintiff, on behalf of herself and all others similarly situated, re-alleges, as if fully set forth

herein, each and every allegation set forth above.

144. Plaintiff and the members of the SRI Class are, or were at all times relevant to this matter,

"consumer(s)" within the meaning of the federal Fair Debt Collection Practices Act, per 15

U.S.C. § 1692a(3).

145. With respect to the loan agreements pursuant to which Defendant TEFCU or any other

creditors operating within the District of Columbia financed Plaintiff's and the SRI Class

members' purchases of motor vehicles, from dealers, for personal use, Defendant TEFCU

or said other creditors are, or were at all times relevant to this matter, a "creditor" within

the meaning federal Fair Debt Collection Practices Act, per 15 U.S.C. § 1692a(4).

146. Plaintiff's and the SRI Class members' obligations to pay money – including their

obligations to pay "Repossession Fees" (or similarly designated fees related to the

repossession of their vehicles) – to Defendant TEFCU or any other creditor operating

within the District of Columbia, pursuant to their loan agreements with Defendant TEFCU

or said other creditors, are, or were at all times relevant to this matter, "debt(s)" within the

meaning federal Fair Debt Collection Practices Act, per 15 U.S.C. § 1692a(5).

147. With respect to the collection of "Repossession Fees," or similarly designated fees, related

to the repossession of Plaintiff's and the SRI Class members' repossessed vehicles,

Defendant SRI is, or was at all times relevant to this matter, a "debt collector" within the

meaning of the federal Fair Debt Collection Practices Act, per 15 U.S.C. §§ 1692a(6) and

1692f(6).

148. Defendant TEFCU's or its agents', or any other creditor operating within the District of Columbia, conditioning redemption, reinstatement, or release of Plaintiff's or the SRI Class members' repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of said vehicle) in excess of $100 (one hundred dollars) violates the express requirements of D.C.M.R. § 16-342.2, and, as such is not, or was not, permitted by law.

149. Defendant SRI's collection of "Repossession Fees," or similarly designated fees related to the repossession of Plaintiff's and the SRI Class members' repossessed vehicles, in excess of $100, therefore violates 15 U.S.C. § 1692f(1).

150. Defendant SRI violated 15 U.S.C. § 1692e, including 15 U.S.C. §1692e(10) and (11).

151. Defendant SRI violated 15 U.S.C. § 1692f, including 15 U.S.C. §1692f(1).

152. Defendant SRI violated 15 U.S.C. § 1692g, including 15 U.S.C. §1692g(a).

153. As a direct and proximate cause of Defendant SRI's collection of "Repossession Fees," or similarly designated fees related to the repossession of Plaintiff's and the SRI Class members' repossessed vehicles, in excess of $100, Plaintiff and the members of the SRI Class have sustained damages in an amount to be determined at trial.

154. As such, Defendant SRI is liable to Plaintiff and the members of the SRI Class for actual and statutory damages and reasonable attorneys' fees and costs, per 15 U.S.C. § 1692k.

**<u>PRAYER FOR RELIEF</u>**

WHEREFOR, Plaintiff, on her behalf and on behalf of the Classes herein defined, prays for judgment as follows:

I.   For an order certifying the proposed plaintiff Classes and appointing Plaintiff and her counsel to represent the Classes;

32

II.   For an order awarding Plaintiff and the members of TEFCU Class:

 A.   amounts not less than the credit service charge for their respective loan agreements, plus ten percent (10%) of the initial principal amount of their respective loans, per 28 D.C. Code § 9-625(c).

 B.   treble damages or $1,500 *per violation* of the D.C. Consumer Protection Procedures Act, whichever is greater;

 C.   compensatory damages equal to the losses incurred by Plaintiff and the members of the TEFCU Class as a result of Defendant TEFCU's breaches of contract and, in any event, not less than the difference between the total delinquency fees that Defendant charged Plaintiff and the members of the TEFCU Class at rate(s) higher than authorized by the patently ambiguous Delinquency Charges term (or similarly titled provisions) and the total delinquency fees that Defendant TEFCU is or would have been authorized to charge Plaintiff and the members of the TEFCU Class had Defendant TEFCU construed said term (or similarly titled provisions) in favor of Plaintiff and the members of the TEFCU class.

 D.   reasonable attorneys' fees and expenses;

 E.   an injunction prohibiting (1) Defendant TEFCU's misrepresentations or omissions regarding how consumers can decline optional credit insurance in connection with consumer auto loans, and (2) Defendant TEFCU's charging consumers with premiums for credit insurance they declined or for which they did not opt;

 F.   an injunction prohibiting Defendant TEFCU's or its agents' storage of vehicles repossessed within the District of Columbia, pursuant to a consumer auto loan, outside of the District of Columbia within fifteen (15) days of said repossession;

G.  an injunction prohibiting Defendant TEFCU's and its agents' conditioning redemption, reinstatement, or release of repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of the vehicle) in excess of $100 (one hundred dollars);

H.  additional relief as may be necessary to restore to Plaintiff and the members of the TEFCU Class money or property that might have been acquired by Defendant TEFCU or its agents by means of (1) Defendant TEFCU's or its agents' misrepresentations or omissions regarding how consumers can decline optional credit insurance in connection with consumer auto loans; (2) Defendant TEFCU's charging consumers with premiums for credit insurance they have declined or for which they did not opt; (3) Defendant TEFCU's or its agents' storage of Plaintiff's and the TEFCU Class members' vehicles repossessed within the District of Columbia, pursuant to a consumer auto loan, outside of the District of Columbia within fifteen (15) days of said repossession; (4) Defendant TEFCU's or its agents' conditioning redemption, reinstatement, or release of Plaintiff's and the TEFCU Class members' repossessed vehicles on the payment of a "Repossession Fee" (or similarly designated fee related to the repossession of said vehicles) in excess of $100 (one hundred dollars); and

I.  any other relief that the Court deems proper.

III.    For an order awarding Plaintiff and the members of the SRI Class:

A.  Plaintiff's and the SRI Class members' actual damages;

B.  such additional damages as the Court may allow per 15 U.S.C. § 1692k;

C.  reasonable attorneys' fees and costs; and

D.  any other relief that the Court deems proper.

IV.   For an order awarding Plaintiffs and the members of the Classes pre- and post-judgment

interest; and

V.   For an order awarding such other and further relief as this Court deems just and proper.

Date:  May 24, 2012                    BERK LAW PLLC
                                       *Co-Counsel for Plaintiff*


By:        **/s/ Steven N. Berk**
           Steven N. Berk (D.C. Bar # 432870)
           *steven@berklawdc.com*
           Matthew J. Bonness (D.C. Bar # 495831)
           *matt@berklawdc.com*
           Lauren E. Connell (*admission pending*)
           *lauren@berklawdc.com*
           BERK LAW PLLC
           2002 Massachusetts Avenue, Northwest, Suite 100
           Washington, District of Columbia  20036
           Telephone:     (202) 232-7550
           Facsimile:     (202) 232-7556

           Christopher J. McGinn
           (*admission pro hac vice forthcoming*)
           *cjmcginn@njconsumerprotection.com*
           LAW OFFICE OF CHRISTOPHER J. MCGINN
           75 Raritan Avenue, Suite 220
           Highland Park, New Jersey  08904
           Telephone:     (732) 937-9400
           Facsimile:     (800) 931-2408